146002.1

Milton Springut (MS6571)
Tal S. Benschar (TSB0838)
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
(212) 813-1600

Attorneys for Plaintiffs
Richemont North America, Inc.
and Cartier International, N.V.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
RICHEMONT NORTH AMERICA, INC.;   :
and CARTIER INTERNATIONAL, N.V.,   :
                                                :
           Plaintiffs,   :
     v.   :
                                              :
SWEEPSTAKES CLEARINGHOUSE,   :
a division of ALLIED MARKETING   :
GROUP, INC.,   :
                                              :
           Defendant.   :
-----------------------------------------------------x



'07 CIV 6091

Civil Action

No.

**COMPLAINT**

Plaintiffs, complaining of Defendant, hereby allege as follows:


## THE PARTIES

1.      Plaintiff Richemont North America, Inc., is a Delaware corporation, having its

executive offices and place of business at 653 Fifth Avenue, New York, New York 10022

("Richemont NA"). Among other divisions of Richemont NA is the Cartier division, hereinafter

referenced as "Cartier NA."

2.      Plaintiff, Cartier International, N.V., is a Netherlands corporation, having its

principal office and place of business at Scharlooweg 33, Curaçao, the Netherlands Antilles

("Cartier International"). For purposes of this Complaint, except where specified, the plaintiffs'

interests herein are as a practical matter identical and they are referred to collectively and interchangeably as "Cartier."

      3.      Defendant Sweepstakes Clearinghouse, division of Allied Marketing Group, Inc., is an entity of unknown corporate character, having a place of business at 1555 Regal Row, Dallas, Texas 75247 ("Allied" or "Defendant").  Defendant Allied is transacting and doing business in this judicial district and is subject to the jurisdiction of this Court.

## JURISDICTION AND VENUE

      4.      This Court has subject matter jurisdiction over the claims in this action under the Trademark Act of 1946, as amended, for trademark and trade dress infringement and false advertising pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

      5.      This Court has supplemental jurisdiction over the claims in this Complaint arising under the common law or statutory law of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. The Court also has jurisdiction over all claims of unfair competition pursuant to 28 U.S.C. § 1338(b).

      6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

### The CARTIER Brand and Businesses

7.      Plaintiffs' origins date to over 150 years ago, when master jeweler Louis Francois Cartier established his jewelry concern in the heart of Paris, and established the CARTIER brand.

8.      Cartier created the first women's wristwatch in 1888, and in 1904 the first wristwatch to utilize a leather strap.

9.      Over the last century and a half, Cartier's leadership in the field of fine jewelry and watch design has caused the Cartier brand to be regarded as the preeminent global symbol of cosmopolitan fashion and prosperity.

10.      For decades, Cartier NA has operated an internationally famous retail store at Fifth Avenue and 52nd Street in New York City.  Cartier NA also operates retail shops in many of America's major cities and licenses distributors to sell world-acclaimed Cartier watches and jewelry throughout the United States in fine stores.

11.      Cartier International is the owner of trademarks and trade dress for watches and jewelry sold by Cartier NA or under its auspices, pursuant to licenses from Cartier International to Cartier NA.

12.      Cartier NA is the exclusive United States trademark and patent licensee of Cartier International.

13.      The watches and jewelry produced pursuant to the foregoing arrangements are variously referred to herein as "Cartier" watches.

14.    No defendant in this action has sought nor received a license from Cartier NA, Richemont NA or Cartier International for any purpose whatsoever.

## THE CARTIER INTELLECTUAL PROPERTY

### The PASHA DE CARTIER Trade Dress

15.    Cartier's PASHA DE CARTIER Watches feature a distinctive and unique combination of elements that collectively create a particular trade dress (the "PASHA DE CARTIER Trade Dress"). The PASHA DE CARTIER Trade Dress consists of a collocation of design elements. The combination of all or almost all such elements together give the watches a distinct overall look and commercial impression. Although these elements cannot be perfectly described in words, the following describes the elements of the PASHA DE CARTIER Trade Dress:

a)    The watch case is round and is thick (*i.e.,* deep) as compared to most watches, with a thick outer metal bezel surrounding the watch face. The bezel is beveled such that it slopes downward from the inside of the case to the outside.

b)    A distinctively shaped removable screw down cap covers a central crown. When viewed from the front of the watch, the shape of the cap, from left to right, is as follows: (1) a first thin metal ring, (2) a second thin metal ring of larger diameter, (3) a third thick metal ring of still larger diameter with engraved striations about the entire ring, (4) a fourth thick, smooth metal ring of smaller diameter than the third ring and tapering to a narrow diameter, and (5) a cabochon (rounded) end, consisting

– 4 –

of sapphire, diamond or colored stone or a rounded stainless-steel dome.     The cap is attached to the watch case with a chain link.

c)      The watch case has single "horned" extensions at the top and bottom thereof for connection to a strap or bracelet.  Unlike most watches, that have two extensions on both the top and bottom such that a strap fits between the extensions, there is only a single extension on each side, and the strap or bracelet fits around the single extension.

d)      A lug fits through the strap/bracelet and the single horned extension and is capped on both sides by distinctive cut-pyramid shapes.

e)      The watch face has large, prominent Arabic numerals with a distinctive curly font.

f)      On models including a metal bracelet, the bracelet consists of H-shaped links alternating with rectangular shaped links.  The width of each of the two legs of the H-shaped link is half that of the rectangular link.

g)      On models including two smaller crowns, the crowns are positioned above and below the central crown, and are capped with non-removable caps, which caps are designed similarly to the main cap and end in matching cabochons.

16.    Figure A (below) are photographs of two variations of the "Pasha de Cartier" watch:

 

**Figure A**

17.    The collocation of features set forth in the above paragraphs constitutes a distinctive trade dress that has secondary meaning.  This design has been extensively promoted by Cartier in the United States and has achieved significant sales success.  The pubic has come to recognize this design as distinctive of this line of Cartier watches and as an indication of source of such watches.

18.    The PASHA DE CARTIER Trade Dress is thus a means by which Cartier is known to the public and the trade as the sole source and origin of PASHA DE CARTIER watches.

**The Pasha de Cartier Registrations**

19.    The PASHA DE CARTIER Trade Dress has been registered on the Principal Register of the United States Patent and Trademark Office, Nos. 3,211,039 and 3,211,038 for, respectively, the PASHA DE CARTIER Trade Dress with and without the distinctive bracelet design. Cartier International is the owner of such registrations and the trade dress set forth therein. Such registrations and the trade dress therein are valid and subsisting. (Such registrations are hereinafter referenced as the "PASHA Registrations").

**The Goodwill and Fame of the Products, Marks and Designs**

20.    Cartier has extensively advertised and promoted the trade dress and design set forth above.

21.    As set forth above, Cartier has also been an important innovator in watch and jewelry fashion and design.

22.    Cartier takes particularly great care and applies the highest level of professional skill in the design and manufacture of its watches and jewelry.

23.    Cartier has invested millions of dollars over the years in marketing, promoting and advertising the fine quality of its jewelry and watches, including the trade dress and designs set forth above.

24.    As a result of all the foregoing, Cartier has established a worldwide reputation for the uniform high quality of Cartier watches and jewelry sold under or in connection with the trade dress, and design set forth above. As a result, these watches and designs have acquired outstanding renown and invaluable goodwill in the United States and around the world.

**Other Lines Of Business By Richemont**

25.    In addition to Cartier, Richemont NA is the exclusive U.S. distributor of other brands of watches. Such watches are manufactured by various corporate affiliates in Europe, and distributed by Richemont NA through other divisions responsible for distribution and promotion of such other brands.

**Defendant's Infringing and Unfairly Competitive Activities**

26.    Defendant has offered for sale and, upon information and belief have sold, watches that infringe the PASHA DE CARTIER Trade Dress. This allegation specifically excludes the watches denoted by Defendant as Model Nos. XSA and XSB, which are the subject of a separate action pending in this Court. This allegation does, however, specifically include the watches denoted by Defendant as Model Nos. XSC and XSD, which have are not the subject of other litigation. In addition, upon information and belief, Defendant is engaged in sales and offer for sales of other watches currently unknown by Plaintiffs that infringe upon its rights.

27.    Upon information and belief, Defendant, without Cartier's authorization, intentionally and knowingly has manufactured and continues to manufacture or cause others to manufacture imitations of Cartier's watches as set forth above.

28.    Upon information and belief, the watches manufactured by Defendant are of inferior quality to genuine Cartier watches.

29.    In addition, as set forth below in Counts IV and V, Defendant has engaged in false and misleading advertising in the sale and promotion of various lines of watches, including, specifically, the watches denoted by Defendant as Model Nos. XSA, XSB, XSC and XSD and, upon information and belief, other lines or models of watches currently unknown by Plaintiffs.

- 8 -

30.    Upon information and belief all the acts complained of herein are still being committed by Defendant.

## COUNT I

### REGISTERED TRADE DRESS INFRINGEMENT
### Section 32 of the Trademark Act, 15 U.S.C. § 1114(1)

31.    Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

32.    Defendant has actual or constructive knowledge of the existence of the PASHA Registrations identified herein.

33.    Defendant has offered for sale and, upon information and belief, sold and distributed watches, as identified hereinabove, bearing a design confusingly similar to the trade dress set forth in the PASHA Registrations, which creates a likelihood of confusion such that the purchasing public is likely to believe that Defendant's watches are authentic Cartier PASHA DE CARTIER watches or are in some manner sponsored, approved or authorized by, or otherwise connected with Cartier.

34.    Defendant's actions constitute willful and deliberate infringement of Cartier's PASHA Registration in violation of § 32 of the Trademark Act, 15 U.S.C. § 1114.

35.    The actions and conduct of Defendant has damaged Cartier and will, unless restrained, further impair, if not destroy, the value of Cartier's PASHA Registrations and PASHA DE CARTIER Trade Dress and the goodwill associated with them, for which Cartier has no adequate remedy at law.

38.    Defendant's trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

39.     Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

## COUNT II

### TRADE DRESS INFRINGEMENT
### Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a)

40.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

41.     The actions of Defendant described hereinabove constitute false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a).

42.     Defendant's trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

43.     Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

## COUNT III

### TRADE DRESS INFRINGEMENT
### New York Common Law

44.     Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

45.     Defendant's actions constitute trade dress infringement and unfair competition in violation of New York common law.

- 10 -

46.    Defendant's trade dress infringement has caused Cartier to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

47.    Defendant's trade dress infringement, unless enjoined by this Court, will continue to cause Cartier to sustain irreparable damage, loss and injury, for which Cartier has no adequate remedy at law.

### COUNT IV

### FALSE ADVERTISEMENT
### 15 U.S.C. § 1125(a)

48.    Plaintiffs repeat and incorporate herein by reference each of the foregoing allegations.

49.    Defendant has advertised for sale watches in interstate commerce, both those accused of trade dress infringement above and others.

50.    In such advertisements, Defendant has offered the watches for sale at a first price and referenced a second much higher price in connection with the words "National Reference Retail."

51.    For example, in advertising the watches accused above of trade dress infringement, Defendant has offered them for $69.95, while listing a "National Reference Retail" price of $479.95.

52.    The "National Reference Retail" price is intended by Defendant to be understood, and upon information and belief is so understood by the public, as the true value and quality of the watch, and a price that other retailers of watches have sold identical, nearly identical or substantially similar watches at retail.

53.     Such advertising is false in that, in fact, the watches considered by Defendant to be identical, nearly identical or substantially similar to the watches advertised were by Defendant's own research sold at retail for half or less than half of the touted "National Reference Retail" price. Further, such considered identical, nearly identical or substantially similar watches are in fact name brand watches of much higher quality than those offered for sale and sold by Defendant.

54.     Such false advertising has the potential to deceive and mislead the purchasing public into falsely believing that such watches sold and offered for sale by Defendant are in fact more valuable and of higher quality than they really are.

55.     As part of its price and quality deception, Defendant uses a complex and confusing pricing scheme, whereby Defendant's targeted customer is charged full price, reflecting the "National Reference Price," and then provided with a credit "voucher" to be applied against the "National Reference Price" to arrive at the true sales price. For example, as to the watches accused of infringement, Defendant purports to charge the customer $479.95 but then provides him/her with a $410.00 credit voucher to be applied to the purchase price, resulting in the true sales price of $69.95. Upon information and belief, this convoluted pricing scheme has no real business purpose other than furthering the deception of Defendant's targeted customer into believing that such items are of far higher quality and value than they truly are.

56.     Upon information and belief, the same form of false advertising described herein above has been perpetrated by Defendant as to other watches and watch models sold and offered for sale to the public.

57.     Defendant is thus in violation of 15 U.S.C. § 1125(a) in that it is a "person who, on or in connection with any goods or services . . . uses in commerce any word, term, name,

symbol, or device, or any combination thereof, or any false designation of origin, false or

misleading description of fact, or false or misleading representation of fact, which . . . in

commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

geographic origin of his or her or another person's goods, services, or commercial activities."

58.     Defendant's false advertising complained of herein, unless enjoined by this Court,

will continue to cause Plaintiffs or one of them to sustain irreparable damage, loss and injury, for

which Plaintiffs have no adequate remedy at law.

## COUNT V

### FALSE ADVERTISEMENT
### N.Y. General Business Law §§ 349 and 350

59.     Plaintiffs repeat and incorporate herein by reference each of the foregoing

allegations.

60.     The acts of false advertisement by Defendant alleged herein constitute violations

of N.Y. Gen. Bus.L. §§ 349 and 350.  For the reasons stated herein, both the public and Plaintiffs

are harmed by such acts of Defendant.

61.     Defendant's false advertising complained of herein, unless enjoined by this Court,

will continue to cause Plaintiffs or one of them to sustain irreparable damage, loss and injury, for

which Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs pray:

1.     That Defendant, its officers, agents, servants, employees and attorneys, and those

in active concert or participation with it or any of them, be permanently enjoined and restrained:

(a)     from using in any manner the PASHA DE CARTIER Trade Dress, alone or

in combination with any other words or designs, in manner likely to cause confusion, deception, or mistake on or in connection with advertising, offering for sale or sale of any goods not manufactured by Cartier, or not authorized by Cartier to be sold in connection with their respective said marks;

(b)     from otherwise competing unfairly with Plaintiffs in any manner; and

(c)     from further acts of false advertisement.

2.      That Defendant be required to deliver up to Plaintiffs for destruction, any and all goods in its possession or under its control that were or are being advertised, promoted, offered for sale or sold in connection with the PASHA DE CARTIER Trade Dress, whether alone or in combination with any words or designs.

3.      That Defendant be required to deliver up to Plaintiffs for destruction, any and all catalogs, circulars and other printed material in their possession or under their control displaying or promoting the goods that were or are being advertising, promoted, offered for sale or sold in connection with the PASHA DE CARTIER Trade Dress, whether alone or in combination with any words or designs.

4.      That Defendant be required to supply Plaintiffs with a complete list of entities or individuals to whom they have offered for sale the goods that were or are being advertised, promoted, offered for sale or sold in connection with the PASHA DE CARTIER Trade Dress, whether alone or in combination with any words or designs, and be required to contact such entities, inform them that such items in Defendant's catalog or promotional materials are no

longer for sale and may no longer be offered for sale, and providing them with the means of

blacking out the offerings of infringing goods in such catalogs or other advertising materials.

5.      That Defendant be ordered pursuant to 15 U.S.C. § 1116(a) to file, with the Court

and serve upon Plaintiffs, within thirty (30) days of the entry of injunction prayed for herein, a

written report under oath or affirmed under penalty of perjury setting forth in detail the form and

manner in which it has complied with permanent injunction.

6.      That Defendant be required, pursuant to 15 U.S.C. § 1117, to account to Plaintiffs

for any and all profits derived by them, and for all damages sustained by Plaintiffs by reason of

Defendant's actions complained of herein, including an award of treble damages as provided for

statute.

7.      That Plaintiffs be awarded punitive damages.

8.      That Plaintiffs be awarded both pre-judgment and post-judgment interest on each

and every damage award.

9.      That pursuant to 15 U.S.C. § 1117, Plaintiffs have and recover from Defendant,

Plaintiffs' reasonable attorneys' fees, costs and disbursements of this civil action.

10.     That Plaintiffs have such other and further relief as the Court may deem just and

proper.

KALOW & SPRINGUT LLP


By: _____
    Milton Springut (MS657?)
    Tal S. Benschar (TSB0838)

    Attorneys for Plaintiffs
    Cartier, a division of Richemont North
    America, Inc., and Cartier International,
    N.V.

Dated: June 28, 2007